UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| BELLSOUTH | ) | |
| TELECOMMUNICATIONS, INC., d/b/a | ) | |
| AT&T KENTUCKY, | ) | Civil Action No. 3: 08-33-DCR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY PUBLIC SERVICE | ) | **MEMORANDUM OPINION** |
| COMMISSION, et al., | ) | **AND ORDER** |
| | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of motions to dismiss filed by Defendants SouthEast Telephone ("SouthEast") and Kentucky Public Service Commission ("Commission").  [Record Nos. 14 and 16]  Both Defendants argue that Plaintiff Bellsouth Telecommunications, Inc. ("AT&T Kentucky") has failed to state a claim upon which relief can be granted, requiring dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons discussed herein, the Court will grant, in part, and deny, in part, these motions.

I.      BACKGROUND

This case involves certain sections of the Telecommunications Act of 1996 (the "1996 Act") that regulate the activities of local exchange carriers ("LECs").  LECs provide telephone services.  The relevant sections require incumbent LECs, like AT&T Kentucky, provide services and resources to competitive LECs, like SouthEast, to promote the over-arching goal of the 1996

-1-

Act: competition within local telecommunications service markets.  *In the Matter of Unbundled Access to Network Elements*, Order on Remand, 20 F.C.C.R. 2533 (2005) [hereafter, *Triennial Review Remand Order*].  Specifically, the resources at issue here are unbundled network elements ("UNEs").  A "network element" is a "facility or [piece of] equipment used in the provision of a telecommunications service."  47 U.S.C. § 153(29) (2000).  It is within the FCC's authority to require that incumbent LECs provide network elements in an "unbundled" form, meaning that the incumbents would have to offer pieces of their networks for competitive LECS to lease, repackage, and use.  47 U.S.C. § 251 (2000).  The incumbent LECs' obligations to provide these UNEs must be embodied in contracts known as "interconnection agreements."[1] Interconnection agreements force incumbent LECs like AT&T Kentucky to "interconnect with and [ ] rent parts of their networks to new entrants – especially those parts of a local network that it is least economic for a new entrant to duplicate."  *Qwest Corp. v. Pub. Utils. Comm'n of Colorado*, 479 F.3d 1184, 1187 (10th Cir. 2007) (quoting James B. Speta, *Antitrust and Local Competition Under the Telecommunications Act*, 71 ANTITRUST L.J. 99, 102-103 (2003)).  The three sections of the 1996 Act at issue here are §§ 251, 252, and 271.  Section 251 imposes the

---

1.     The D.C. Circuit has provided a helpful description of the concept of UNEs:

> Suppose a competitive LEC . . . wants to serve customers in Washington, D.C.  One way of doing so is for the [competitive LEC] to purchase its own [equipment], which it can then use to offer service to its new customers.  However, given that the incumbent LEC . . . has already deployed [equipment] to serve the market, it might be economically impossible for [the competitive LEC] to duplicate competitively [the incumbent LEC]'s infrastructure.  Through regulatory unbundling, however, [the competitive LEC] might be able to lease [the incumbent LEC's equipment] as UNEs. [The competitive LEC] could then use [the UNEs] to cobble together a network and compete against [the incumbent LEC] in Washington, D.C.

*Covad Commc'ns Co. v. F.C.C.*, 450 F.3d 528, 532 (D.C. Cir. 2006).

actual unbundling requirements; § 252 lays out the guidelines for interconnection agreements; and § 271 allows certain companies to offer long-distance telephone services if they have met specific requirements.

### A.    UNEs Under §§ 251 and 252

Section 251 imposes a duty on all LECs to "interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers."  47 U.S.C. 251(a).  Subsection (c) further specifies this duty as it applies to incumbent LECs.  Incumbent LECs must negotiate interconnection agreements in good faith, provide unbundled and nondiscriminatory access to its network elements, and offer for resale at wholesale rates any telecommunications service that the incumbent LEC provides at retail.  47 U.S.C. § 251(c); *Verizon North Inc. v. Strand*, 367 F.3d 577, 582 (6th Cir. 2004).  This case concerns AT&T Kentucky's former obligation under § 251(c) to provide unbundled network elements through an interconnection agreement.  The specific network elements involved are "switches," which are equipment that route traffic on a telecommunications network.  *See AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 371 (1999).  The FCC determines which network elements must be unbundled.  This determination is based on whether competitors would otherwise be impaired in their ability to provide telecommunications services.  47 U.S.C. § 251(d)(2).  Competitor LECs are considered "impaired" when there is no potential for competition absent leased access to the LEC's network.  *Covad*, 405 F.3d at 540.  Once the FCC has determined that a particular network element is required for competitor LECs to compete, the element is known as a UNE.

Incumbent LECs are not required to provide these UNEs free of charge. Section 252 of the 1996 Act allows incumbent LECs to charge "reasonable and nondiscriminatory rates for this access." *Quick Commc'ns, Inc. v. Michigan Bell Tel.*, 515 F.3d 581, 583 (6th Cir. 2008) (citing 47 U.S.C. § 252(d)). The rates are established by state public utilities commissions like the Kentucky Public Service Commission, through a methodology known as the Total Element Long Run Incremental Cost ("TELRIC"). State commissions, incumbent LECs, and competitive LECs work together to establish TELRIC rates within interconnection agreements. 47 U.S.C. § 252. TELRIC rates are set without reference to rates of return or the actual cost of constructing the elements. *Verizon Commc'ns*, 535 U.S. at 489; *United States Telecomm. Ass'n v. F.C.C.*, 359 F.3d 554, 562 (D.C. Cir. 2004).

In the early years following the 1996 Act, the FCC required incumbent LECs to provide all the basic piece-parts of their networks as UNEs at low TELRIC rates. *Iowa Utils. Bd.*, 525 U.S. at 389-391. As a result, the FCC found that, instead of creating an incentive for competition, unbundling was discouraging competitor LECs from truly competing at all. "[E]ven when some competitive LECs acquired a significant number of customers in densely populated areas they never converted to reliance on their own facilities." *Triennial Review Remand Order* at 2654-2655. The *Triennial Review Remand Order* was a response to numerous federal courts' vacating the FCC's blanket unbundling requirements. The FCC found that switches were not network elements that incumbent LECs were required to provide as UNEs. After researching markets across the United States, the FCC found that competitive LECs were not only able to provide their own switches, but also often did so. Thus, they were no longer

considered impaired regarding switches and incumbent LECs like AT&t Kentucky are no longer under an obligation to provide switches as UNEs. *Id.* at 2644-2647.

### B.    Relevance of § 271

Section 271, like §§ 251 and 252, imposes obligations on incumbent LECs. But § 271 applies only to Bell Operating Companies ("BOCs"), a subset of incumbent LECs that were once AT&T subsidiaries. 47 U.S.C. § 271(a). AT&T Kentucky, a BOC, is allowed to provide long-distance service in its local market if that market is sufficiently competitive. However, a BOC may only provide local long-distance service if it has satisfied a "competitive checklist." *Id.* at § 271(c)(1)- (2). These provisions ensure competition within a local market without subjecting a BOC to unnecessary restrictions. *SBC Commc'ns Inc. v. F.C.C.*, 138 F.3d 410, 413-414 (D.C. Cir. 1998). Unlike § 251, the language of § 271 expressly states that the FCC determines compliance under the section. However, the FCC must still "consult with the State commission of any State that is the subject of the application in order to verify the compliance of the [BOC] with the requirements." 47 U.S.C. § 271(d)(2)(B). AT&T Kentucky obtained FCC approval to provide long-distance service by satisfying the "competitive checklist"laid out in § 271(c)(2)(B). [Record No. 1]

Before 2005, § 271 compliance "was not a contentious issue because the FCC's interpretation of § 251 required incumbent LECs to provide the § 271 network facilities" as part of the interconnection agreements negotiated under § 251. *Sw. Bell Tel., L.P. v. Missouri Pub. Serv. Comm'n*, 530 F.3d 676, 681 (8th Cir. 2008). However, with the 2005 *Triennial Review Remand Order*, incumbent LECs were no longer required to provide certain network elements

– like switches – as unbundled under § 251.  Based on this development, questions arose

regarding whether these previously unbundled network elements would now be provided under

§ 271 and, if so, at what rates.  Under § 271, incumbent LECs like AT&T Kentucky would be

held to a less regimented and restricted pricing arrangement than TELRIC under § 251.

> If a network element on the section 271 competitive checklist is not required to
> be unbundled pursuant to section 251(c)(3) (*i.e.*, local circuit switching and
> shared transport in certain circumstances), Bell Operating Companies are not
> required to offer unbundled access to any such checklist items in compliance with
> the Commission's pricing rules.  Rather, the applicable price, terms, and
> conditions for that element are determined by applying sections 201(b) and 202(a)
> of the Act.

*In the Matter of Implementation of the Local Competition Provisions of the Telecommunications*

*Act of 1996*, Third Report and Order and Fourth Further Notice of Proposed Rulemaking, 15

F.C.C.R. 3696, 3709 (1999) [hereafter, *UNE Remand Order*].  Switches fall precisely under the

description above because the FCC no longer requires their unbundling under § 251.  If switches

are offered pursuant to § 271, they must be offered at prices complying with §§ 201(b) and

202(a) of the 1996 Act which direct that rates must be "just and reasonable."  47 U.S.C. §§

201(b), 202(a).  Switches and other network elements that are no longer considered UNEs have

spawned litigation across the country concerning whether they must be provided pursuant to §

271, and, if so, at what rates.  *See Missouri Pub. Serv. Comm'n*, 530 F.3d at 676; *Nuvox*

*Commc'ns, Inc. v. BellSouth Commc'ns, Inc.*, 530 F.3d 1330 (11th Cir. 2008); *Verizon New*

*England, Inc. v. Maine Pub. Utils. Comm'n*, 509 F.3d 1 (1st Cir. 2007); *Qwest Corp. v. Pub.*

*Utils. Comm'n of Colorado*, 479 F.3d 1184 (10th Cir. 2007).

In the case presently before the Court, AT&T Kentucky argues that it is not offering switches to SouthEast pursuant to § 271, but rather pursuant to the parties' interconnection agreement. SouthEast and the Commission assert that the switches are provided pursuant to § 271.

### C.    Procedural History

AT&T Kentucky seeks to challenge a series of actions by the Commission and SouthEast that concern the rate SouthEast pays AT&T Kentucky for the network elements known as switches. These actions have been the subject of several lawsuits in this Court, beginning in early 2005.

After the FCC released its *Triennial Review Remand Order* in 2005, AT&T Kentucky (then BellSouth) notified the competitive LECs in the area that it would no longer accept new UNE orders. These competitor LECs petitioned the Commission to prevent AT&T from taking this action. A few months later, the Commission granted the requested relief and issued two orders requiring that AT&T Kentucky continue providing the UNE orders. [Record No. 19] In April 2005, AT&T Kentucky sought and obtained an injunction from United States District Judge Joseph M. Hood against the Commission's orders. *Bellsouth Telecomms., Inc. v. Cinergy Commc'ns Co.*, No. 3: 05-16-JMH, 2006 WL 695424 (E.D. Ky. Mar. 20, 2006) (unpublished). After the injunction was issued, numerous competitive LECs in Kentucky complied with the new requirements established in the *Triennial Review Remand Order* and entered into new interconnection agreements that replaced the UNE provisions of existing interconnection agreements. These new agreements priced network elements at market rates, rather than the

former UNE rates.  SouthEast did not negotiate a new agreement, but instead continued to place orders for network elements under the UNE provision of its existing interconnection agreement. These orders are the crux of the parties' disagreement.

SouthEast continued to pay the prices it paid under the UNE provision of the interconnection agreement.  AT&T Kentucky argues that SouthEast needed to pay the price listed under the resale provision of the interconnection agreement, rather than the price listed under the UNE provision of the agreement because the *Triennial Review Remand Order* had eliminated the switches as UNEs.  AT&T Kentucky's argument was that the FCC had eliminated the UNE rate and, therefore, the only applicable rate for the network elements SouthEast was ordering was the resale rate in the agreement.  SouthEast had failed to negotiate a new agreement as other LECs had done.

In December 2005, SouthEast filed a complaint against AT&T Kentucky with the Commission.  And in August 2006, the Commission found that, although the FCC had eliminated switches as UNEs under § 251, AT&T Kentucky was still required to provide switches and other elements pursuant to § 271.  The Commission determined that elements provided under § 271 were wholesale services that had to be made available on a commingled basis with the remaining § 251 UNEs.  Therefore, the prices for those services was set at one dollar above the low TELRIC price of the UNEs.  [Record No. 19]

In September 2007, AT&T Kentucky once again sought relief in this Court.  United States District Judge Karen K. Caldwell declared the Commission's August 2006 order unlawful and enjoined its enforcement.  The relevant portions of the opinion are set forth below:

> The [Commission] claimed to act pursuant to § 271 in its Order.  However, it
> simply cannot point to any provision in § 271 granting it authority to enforce §
> 271 and set rates for those elements.  The plain language of the statute does not
> grant the [Commission] authority to act pursuant to § 271.

*BellSouth Telecomm., Inc. v. Kentucky Pub. Serv. Comm'n*, No. 3: 06-65-KKC, 2007 WL

2736544, at *6 (E.D. Ky. Sept. 18, 2007) [hereafter, the First Action].  The Court remanded the

case to the Commission to determine if and how much damages were owed to AT&T Kentucky

"as a result of the unlawful orders."  *Id*. at *7.

On remand, AT&T Kentucky moved for monetary relief covering the difference between

the resale price of the services SouthEast ordered and the price – one dollar over the TELRIC

rate – that SouthEast actually paid.  In a May 2008 Order, the Commission rejected AT&T

Kentucky's request and found that SouthEast had not ordered the services under the resale

provision of the interconnection agreement.  Rather, the Commission found that SouthEast had

intentionally ordered the services pursuant to § 271.  As a result, the Commission refused to

award any damages at all based on this Court's holding that the Commission lacked the authority

to set § 271 rates.  [Record No. 19]  AT&T Kentucky filed a motion for reconsideration of the

Commission's order, but that request was denied.  AT&T Kentucky then filed a complaint in this

Court, arguing that, by denying AT&T Kentucky any relief at all, the Commission left SouthEast

and AT&T Kentucky in the exact same position they were in before Judge Caldwell's September

2007 decision.  Specifically, AT&T Kentucky alleges that: (1) the Commission's May 2008

Order violated the Court's September 2007 decision; (2) the Commission's May 2008 Order

violated the terms of the 1996 Act; and, in the alternative, (3) SouthEast breached its contract

by failing to pay the resale amount for services rendered.  SouthEast and the Commission argue

that (1) *res judicata* bars this Court from hearing AT&T Kentucky's case and (2) this Court would supplant the role of the state commission by reviewing this dispute. Additionally, SouthEast argues that this Court lacks diversity jurisdiction over AT&T Kentucky's contract claim. The Court considers these arguments on both SouthEast's and the Commission's motions for dismissal.

## II.    STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Ley v. Visteon Corp.*, 540 F.3d 376, 380 (6th Cir. 2008); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996). "Factual allegations contained in a complaint must raise a right to relief above the speculative level." *Bassett v. Nat'l College Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)). Heightened fact pleading of specifics is not required – only enough facts to state a claim to relief that is plausible on its face. *Id.* The Court may consider the complaint, as well as "any exhibits attached thereto, public records, [and] items appearing in the record of the case." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted).

Although *res judicata* is an affirmative defense, it may be raised in a motion to dismiss. *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). The propriety of such a motion is predicated on the complaint's clearly showing on its face that the affirmative defense

is applicable.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2008); *see also Platsis v. E.F. Hutton & Co., Inc.*, 946 F.2d 38, 42-43 (6th Cir. 1991).  Additionally, such a motion is appropriately granted when "judicial notice of the court's own records establishes the defense and there are no disputed facts."  18 Charles Alan Wright et al., Federal Practice and Procedure § 4405 (2008) (internal citation omitted). On a motion to dismiss, the court may take "judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion."  *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).  Looking to such opinions and other public records "does not result in a conversion of the motion to dismiss to a motion for summary judgment."  *Id.*

### III.   ANALYSIS

#### A.   *Res Judicata*

SouthEast and the Commission argue that all three of AT&T Kentucky's claims – failure to follow Judge Caldwell's remand instructions in the First Action, violation of the 1996 Act, and breach of contract – are precluded based on the First Action.  For the reasons below, the Court finds that only AT&T Kentucky's last claim (*i.e.*, breach of contract) is precluded by the doctrine of *res judicata*.

*Res judicata* espouses the important rule of finality: it is a "general and well-established doctrine . . . conceived in the light of the maxim that the interest of the state requires that there be an end to litigation – a maxim which comports with common sense as well as public policy." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401-402 (1981).  The doctrine now

encompasses two categories that carry a number of different labels: (1) Claim preclusion, or "true" *res judicata*, or merger and bar; and (2) Issue preclusion, or collateral estoppel.  *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, fn. 4 (6th Cir. 2002).  Claim preclusion requires a final judgment on the merits involving parties and claims identical to a previous suit, whereas issue preclusion more specifically requires that an identical issue – as opposed to an identical claim and identical parties – was raised and adjudicated in the previous suit.

Claim preclusion casts a potentially wide net: a final judgment on one claim extinguishes that claim and any other claims arising from the same transaction.  In other words, claim preclusion prevents a party from splitting claims, or, "bringing two different suits which present two different theories of the case arising from the same factual situation."  *Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999) (citing RESTATEMENT (SECOND) OF JUDGMENTS §§ 24, 25).  To invoke claim preclusion successfully, a litigant must establish four elements:

> (1) a final decision on the merits; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (citation omitted).

Issue preclusion  is slightly narrower in terms of actual adjudication, but broader in that it addresses issues rather than claims; "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies."  *Trafalgar Corp. v. Miami County Bd. Of Comm'rs*, 519 F.3d 285, 287 (6th Cir. 2008) (citation omitted).  Issue preclusion requires a party to establish the following elements:

-12-

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Kosinski v. C.I.R.*, 541 F.3d 671, 675 (6th Cir. 2008) (internal citation omitted).

### 1.      AT&T Kentucky's First Two Claims

Neither of AT&T Kentucky's first two claims even existed at the time of the First Action. The first claim is that the Commission's May 2008 Order violated federal law by failing to adhere to this Court's remand instructions.  The second claim is that the May 2008 Order was a violation of the 1996 Act.  The final decision rendered by the court in the First Action was that the Commission "had no authority to act pursuant to § 271" and that the Commission was enjoined from enforcing its earlier Order.  *BellSouth Telecomm., Inc. v. Kentucky Pub. Serv. Comm'n*, 2007 WL 2736544, at *7.  The Court then remanded the case to the Commission to determine "what, if any, damages are due as a result of the unlawful orders."  *Id.*  On remand, the Commission declined to calculate any damages resulting from its earlier orders, stating that the court in the First Action had prohibited the Commission from setting rates pursuant to § 271. AT&T Kentucky's first two claims concern this refusal to calculate damages – an event that occurred after the First Action.  Where a claim was not ripe at the time of the first suit, *res judicata* does not apply.  *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006).  "'[A]n action need include only the portions of the claim due at the time of commencing that action.'"  *Brown v. Potter*, 248 Fed. App'x 712, 713 (6th Cir. 2007) (unpublished) (quoting

18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4409 (2d ed. 2002)).

The Commission makes much of the fact that AT&T Kentucky requests relief identical to the relief it requested in the First Action.  [Record No. 23]  However, identical relief does not necessarily indicate identical claims or issues.  Even if it did, the Commission fails to note that AT&T Kentucky also requests relief from the Commission's latest order – an order that did not exist at the time of the First Action.  [Record No. 1]  The Defendants ask the Court to disregard the Sixth Circuit's decision in *Rawe*.  In *Rawe*, the plaintiff brought a second suit against her insurer for bad faith claims based on the insurer's conduct after the filing of the first suit.  The Sixth Circuit found that these bad faith claims were not barred by *res judicata* and instead ruled that "an action need include only the portions of the claim due at the time of commencing that action."  *Rawe*, 462 F.3d at 530 (citation omitted).

The Court finds this decision a useful illustration of the concept that *res judicata* simply cannot bar a claim that did not exist at the time of the first proceeding.  As in *Rawe*, at the time of the first lawsuit, the defendants here had not yet committed the action which comprises plaintiff's claims.  In fact, when it filed suit in the First Action, AT&T Kentucky could not even have foreseen that the Commission would fail or refuse to calculate damages in an order on remand.  The events giving rise to AT&T Kentucky's first two claims are a separate occurrence from the events that gave rise to the First Action.  These claims are based on a subsequent event: the Commission's May 2008 Order.  Therefore, they are not barred by the doctrine of *res judicata*.

## 2.     AT&T Kentucky's Last Claim for Breach of Contract

AT&T Kentucky's claim for breach of contract, however, is barred by the doctrine of claim preclusion.  The breach of contract claim is against Defendant SouthEast, for "failure to pay the full amount owed for the resale services that it ordered under the parties' interconnection agreement."  [Record No. 1, p. 18]  Unlike AT&T Kentucky's first two claims, this claim does not hinge on the Commission's May 2008 Order.  Instead, it is based on SouthEast's failure to pay a disputed rate; the basis being the same set of events that gave rise to the First Action.  SouthEast was also a defendant in the First Action as it is here.  All the elements necessary for claim preclusion exist here.

AT&T Kentucky first argues that the claim is not precluded because it was not ripe at the time of the First Action.  Although this argument applied to the first two claims, it is inapplicable to the third.  To bolster its argument, AT&T Kentucky observes that it is "significant" that the claim is pleaded in the alternative; however, the contingent nature of the claim does not lend it any more legitimacy.  Simply because there is a possibility that the claim may not be necessary to the Plaintiff's case does not mean that it is not barred by *res judicata*.

AT&T Kentucky asserts that this claim was not ripe until after the Commission refused to calculate damages in its May 2008 Order.  The May 2008 Order did give rise to AT&T Kentucky's first and second claims, but it has no bearing on AT&T Kentucky's cause of action for breach of contract against SouthEast.  This cause of action existed both before and after the May 2008 Order.  In the First Action, AT&T Kentucky brought suit against both SouthEast and the Commission seeking to enjoin either party from acting pursuant to an earlier Commission

order.  AT&T Kentucky asked the court to order SouthEast to pay the resale rates for services ordered.  During that action, AT&T Kentucky should have brought the claim it now seeks to bring against SouthEast.  In fact, AT&T Kentucky itself argues that the 1996 Act bestows upon federal courts the "jurisdiction to hear breach-of-interconnection-agreement claims in the first instance."  [Record No. 19, p. 24]  If this is indeed AT&T Kentucky's position, then the breach of contract claim should have been asserted in the First Action.

"A plaintiff must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora."  *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004) (citing RESTATEMENT OF JUDGMENTS (SECOND) § 24 (1982)).  Claim preclusion prohibits a party from "bringing two different suits which present two different theories of the case arising from the same factual situation."  *Wilkins*, 183 F.3d at 535.  The breach of contract theory of the case clearly arises from the factual situation that gave rise to the First Action and is barred by *res judicata*.

### B.    The Role of the Court in Reviewing the Commission's Order

The Commission also argues that allowing AT&T Kentucky to proceed with a trial before this Court "would supplant the role that state commissions have to interpret and enforce disputes that arise under interconnection agreements pursuant to 47 U.S.C. § 252.  States are uniquely suited to review disputes arising from interconnection agreements that they approved."  [Record No. 16]  The Commission is correct in asserting that state commissions wield the power of approving or disapproving interconnection agreements under §§ 251 and 252.  However, § 252(e)(6) explicitly provides that:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

47 U.S.C. § 252(e)(6).

The Supreme Court has held that, even if this section of the 1996 Act does not confer jurisdiction on federal district courts, it does not divest such courts "of their authority under 28 U.S.C. § 1331 to review the [state commission's] order for compliance with federal law." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 641-642 (2002). Additionally, it is questionable whether the Court is being asked to review an interconnection agreement; such a statement assumes the question at issue – whether AT&T Kentucky is providing SouthEast network elements pursuant to an interconnection agreement, or pursuant to § 271. Thus, the Commission's argument that this Court cannot supplant the Commission's review role under §§ 251 and 252 is an assumption of the disputed point.

The cases from the Eleventh and Third Circuits cited by the Commission involve a state commission's authority to interpret agreements under §§ 251 and 252. In *Core Communications, Inc. v. Verizon Pennsylvania, Inc.*, 493 F.3d 333 (3d. Cir. 2007), the Third Circuit held that the federal district court could not hear a dispute involving breach of an interconnection agreement where the state commission had not yet heard it. In *BellSouth Telecommc'ns, Inc. v. MCIMetro Access Transmission Servs.*, 317 F.3d 1270 (11th Cir. 2003), the Eleventh Circuit held that state commissions have the power to interpret and enforce interconnection agreements, and federal district courts have jurisdiction over challenges to these interpretation and enforcement orders. *Id.* at 1278-1279. However, these cases, along with the Supreme Court's *Verizon Maryland*

-17-

decision, and the Sixth Circuit's decision in *Michigan Bell Tel. Co. v. MFS Intelenet of Michigan*, *Inc.*, 339 F.3d 428, 436 (6th Cir. 2003), only support the contention that this Court may hear this case. These cases make it clear that, once a state commission has reviewed or otherwise interpreted an interconnection agreement, that review or interpretation is subject to further review by a federal district court.

In the present case, AT&T Kentucky seeks just such a review by asking this Court to review the Commission's May 2008 Order. Such review clearly does not run afoul of the dictates of the 1996 Act and federal case law. Further, it is important to observe that the Defendants' arguments concerning court review of interconnection agreements may not even be applicable to the Commission's May 2008 Order. As stated above, the May 2008 Order assumed that AT&T Kentucky was providing switches pursuant to § 271 rather than an interconnection agreement. [Record No. 1, Attachment 3] The Commission did not interpret the parties' interconnection agreement because it found that the dispute did not address any provision within the agreement. In a brief, one-paragraph discussion of the definition of "resale," the Commission determined that SouthEast's orders did not fall under the resale provision of the agreement. As a result, this Court's review of AT&T Kentucky's first two claims would not necessarily be a review of a Commission determination of breach of interconnection agreement.[2] In any case, even if the Commission's Order could be viewed as an interpretation of an interconnection agreement, this Court would clearly have jurisdiction over AT&T Kentucky's challenge to it.

---

2.      Having found that AT&T Kentucky's third claim for breach of contract is barred by *res judicata*, the Court need not address jurisdictional arguments concerning that claim.

## IV.     CONCLUSION

Dismissal of AT&T Kentucky's breach of contract claim is appropriate based on the doctrine of claim preclusion.  However, AT&T Kentucky's first two claims remain, as they are barred by neither *res judicata* nor lack of jurisdiction.  Accordingly, it is hereby

**ORDERED** as follows:

1.      Defendant SouthEast Telephone, Inc.'s motion to dismiss [Record No. 14] is **GRANTED**, in part, and **DENIED**, in part;

2.      Defendant Kentucky Public Service Commission's motion to dismiss [Record No. 16] is **GRANTED**, in part, and **DENIED**, in part;

3.      Plaintiff BellSouth Telecommunication, Inc., d/b/a, AT&T Kentucky's third claim for breach of contract is **DISMISSED**.

This 10th day of December, 2008.



Signed By:
*Danny C. Reeves*  DCR
**United States District Judge**