UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| BELLSOUTH TELECOMM., INC. d/b/a AT&T KENTUCKY,<br><br>    Plaintiff,<br><br>V.<br><br>KENTUCKY PUB. SERV. COMM'N, et al.,<br><br>    Defendants. | Civil Action No. 3: 08-33-DCR<br><br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Defendants SouthEast Telephone ("SouthEast") and Kentucky Public Service Commission ("Commission"), along with Plaintiff Bellsouth Telecommunications ("AT&T Kentucky"), have been engaged in a protracted legal battle over the pricing of certain network elements. Specifically, AT&T Kentucky seeks payment for services provided to SouthEast, for which SouthEast did not pay the amount specified in the negotiated interconnection agreement. SouthEast contends that it paid the appropriate price based on § 271 of the Telecommunications Act of 1996 ("1996 Act"). *See* 47 U.S.C. § 271. For the reasons discussed below the Court disagrees with the arguments advanced by SouthEast and the Commission. As a result, the Court will grant AT&T Kentucky's request and remand this matter with instructions to the Commission.

**I.     Discussion**

The legislative and procedural history of this dispute is central to its analysis. Although the facts are straightforward, the parties have submitted voluminous briefs and exhibits detailing various provisions of the 1996 Act. These provisions – §§ 251, 252, and 271 – regulate the activities of both incumbent and competitive local exchange carriers ("LECs") like AT&T Kentucky and SouthEast, respectively.

Under the 1996 Act, incumbent LECs are required to provide certain services and resources to competitive LECs to promote the over-arching goal of the 1996 Act: competition within local telecommunications service markets. *In the Matter of Unbundled Access to Network Elements*, Order on Remand, 20 F.C.C.R. 2533 (2005) [hereafter, the *Triennial Review Remand Order*]. In furtherance of this effort, AT&T Kentucky was, until recently, required to provide "switching," a network element, to SouthEast at a low, regulated rate. 47 U.S.C. § 251 (2000). This obligation, referred to as "unbundling," is embodied in contracts, or "interconnection agreements" between LECs.

Unbundling provisions in these interconnection agreements force incumbent LECs like AT&T Kentucky to "interconnect with and [] rent parts of their networks to new entrants – especially those parts of a local network that it is least economic for a new entrant to duplicate." *Qwest Corp. v. Pub. Utils. Comm'n of Colorado*, 479 F.3d 1184, 1187 (10th Cir. 2007) (quoting James B. Speta, *Antitrust and Local Competition Under the Telecommunications Act*, 71 ANTITRUST L.J. 99, 102-103 (2003)). Switching is considered one of these cost-intensive services, and the lowered, regulated rate at which it is offered is based on total element long run

incremental cost ("TELRIC"), which greatly benefits the competitive LECs who sought access to the unbundled network elements. TELRIC rates are set without reference to rates of return or the actual cost of constructing the elements. *Verizon Commc'ns*, 535 U.S. at 489; *United States Telecomm. Ass'n v. F.C.C.*, 359 F.3d 554, 562 (D.C. Cir. 2004).

However, with the *Triennial Review Remand Order*, the FCC eliminated incumbent LECs' § 251 unbundling obligation regarding switching. *Triennial Review Remand Order* at 2654-2655. Up until that point, there was substantial overlap between those § 251 network elements for which the FCC required unbundling and those elements listed in § 271 of the 1996 Act. *Verizon New England, Inc. v. Maine Pub. Util. Comm'n*, 509 F.3d 1, 5 (1st Cir. 2007). Section 271 requires certain incumbent LECs – former Bell System operating companies – to make specific network elements permanently available to other LECs, in contrast to the incumbent LEC duties under §§ 251 and 252, which fluctuate based on the FCC's unbundling requirements at any given time. Once the FCC issued the *Triennial Review Remand Order* and incumbent LECs were no longer required to provide switching at the TELRIC unbundled rate, state commissions and LECs were left in limbo trying to determine the appropriate rate for these now "delisted" network elements. Many state commissions turned to § 271 for guidance and applied its "just and reasonable" pricing standard, allowing incumbent LECs to charge higher rates than they previously charged using the TELRIC standard. *See In the Matter of Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, Third Report and Order and Fourth Further Notice of Proposed Rulemaking, 15 F.C.C.R. 3696, 3709 (1999); 47 U.S.C. §§ 201(b), 202(a).

In the present case, the Commission took the above-described route, albeit with some problematic detours. After the FCC eliminated AT&T Kentucky's unbundling obligations, numerous competitive LECs in Kentucky petitioned the Commission to require AT&T Kentucky to continue to provide unbundled network elements until they could renegotiate their interconnection agreements. The Commission granted the requested relief, prompting AT&T Kentucky to file a complaint with this Court. In a series of decisions issued by Judge Joseph M. Hood, the Commission was enjoined from forcing AT&T Kentucky to continue to provide unbundled network elements. *See BellSouth Telecomms., Inc. v. Cinergy Comm'ns Co.*, No. 3:05-CV-16-JMH, 2006 WL 695424 (E.D. Ky. Mar. 20, 2006). At that point, most competitive LECs negotiated new agreements with AT&T Kentucky, finally giving up their battle to obtained discounted network elements from the incumbent LEC. SouthEast, however, did not give up.

SouthEast and AT&T Kentucky were unable to negotiate a new agreement. As a result, SouthEast proceeded to order formerly-unbundled network elements pursuant to the resale provision of its existing interconnection agreement with AT&T Kentucky. In essence, SouthEast was no longer able to order switching at the low, TELRIC rate for unbundled elements, and subsequently unable to order switching pursuant to § 271 because the parties' failure to negotiate a new § 271 interconnection agreement. However, even though SouthEast ordered switching as a resale item, it refused to pay the resale rate and instead continued to pay the TELRIC rate. Due to this failure to pay the resale rate for resale items, AT&T Kentucky notified SouthEast of its intent to terminate services if the bills were not paid in full. SouthEast then filed another

complaint with the Commission. The Commission once again complied with SouthEast's request by (1) ordering AT&T Kentucky to consider SouthEast's account paid in full during the pendency of the dispute; and (2) setting the rate for SouthEast's switching orders at one dollar over the TELRIC amount, relying on § 271 as authority.

AT&T Kentucky again sought relief from this Court. This time, Judge Karen K. Caldwell enjoined the Commission's actions, explaining that state commissions had no authority to act pursuant to § 271.

> The [Commission] claimed to act pursuant to § 271 in its Order. However, it simply cannot point to any provision in § 271 granting it authority to enforce § 271 and set rates for those elements. The plain language of the statute does not grant the [Commission] authority to act pursuant to § 271.

*BellSouth Telecomm., Inc. v. Kentucky Pub. Serv. Comm'n*, No. 06-65-KKC, 2007 WL 2736544, at *6 (E.D. Ky. Sept. 18, 2007) [hereafter, the *September 2007 Order*]. Indeed, almost every federal court to preside over this issue has found that state commissions have no authority to enforce or set rates under § 271 – it is solely the province of the FCC. *See Missouri Pub. Serv. Comm'n*, 530 F.3d at 676; *Nuvox Commc'ns, Inc. v. BellSouth Commc'ns, Inc.*, 530 F.3d 1330 (11th Cir. 2008); *Verizon New England, Inc. v. Maine Pub. Utils. Comm'n*, 509 F.3d 1 (1st Cir. 2007); *Qwest Corp. v. Pub. Utils. Comm'n of Colorado*, 479 F.3d 1184 (10th Cir. 2007). Judge Caldwell remanded the matter to the Commission to determine "the amount of damages, if any, owed" to AT&T Kentucky as a result of SouthEast's failure to pay resale rates. *September 2007 Order* at 21.

On remand, the Commission refused to calculate damages based on Judge Caldwell's ruling that the Commission had no authority under § 271. Assuming, with little explanation in

support, that SouthEast had ordered switching pursuant to § 271 rather than the resale provision of its interconnection agreement, the Commission declared that it was unable to grant AT&T Kentucky's requested relief. *See Bellsouth Telecomms., Inc.'s Notice of Intent to Disconnect SouthEast Tel., Inc. For Non-Payment*, Case Nos. 2005-00519, 2005-00533 (Ky. Pub. Serv. Comm'n May 2, 2008).

As a result of the Commission's most recent actions, this lengthy game of chicken has once again found its way to this Court. AT&T Kentucky requests that this Court order the Commission to calculate and award damages, in compliance with Judge Caldwell's *September 2007 Order*. Although SouthEast presents a number of arguments in response, only one addresses the crux of the debate: SouthEast claims that it is entitled to § 271 "just and reasonable" rates regardless of whether they negotiated a new interconnection agreement specifically pursuant to § 271.

Section 271 itself specifies the following:

> A Bell operating company meets the requirements of this subparagraph **if it has entered into one or more binding agreements** that have been approved under section 252 of this title specifying the terms and conditions under which the Bell operating company is providing access and interconnection to its network facilities for the network facilities of one or more unaffiliated competing providers of telephone exchange service . . . to residential and business subscribers.

47 U.S.C. § 271(c)(1)(A) (emphasis added). Thus, by its own terms, § 271 requires the existence of an agreement to take advantage of its provisions.

Both parties took calculated risks in hope of emerging as the winner in this dispute. However, the plain language of the statute and the undisputed fact that SouthEast ordered

network elements pursuant to the resale provision of the agreement, support AT&T Kentucky's petition. In its briefs and at oral argument, SouthEast conceded that it had continued to order services as resale items. Although SouthEast argues that this was a position it was forced to take as a result of the parties' inability to negotiate a new interconnection agreement, this argument carries little weight when viewed in context: numerous other competitive LECs within Kentucky negotiated new agreements. SouthEast is not alone in having lost certain benefits that had been conferred on competitive LECs. The FCC's elimination of unbundling obligations resulted in higher network element rates for many competitive LECs around the country. However, such an impact does not entitle SouthEast or the Commission to fashion their own remedies.

In sum, SouthEast did not pay for the services it ordered and the Commission improperly endorsed this nonpayment under the purported umbrella of § 271. However, the parties' failure to negotiate a § 271 agreement, and SouthEast's undisputed use of the resale provision of the interconnection agreement, clearly establish that § 271 does not apply. Therefore, the Court directs the Commission to calculate the amount due to AT&T Kentucky based on the resale rate contained in the interconnection agreement, minus the amounts actually paid by SouthEast, along with any applicable late charges, penalties, and interest as specified under the interconnection agreement.

The remainder of the Commission's and SouthEast's arguments question the Commission's jurisdiction over this dispute and its authority to award damages pursuant to federal law. Because they are premised on the incorrect assumption that § 271 applies, these arguments are irrelevant. SouthEast makes one additional argument: that the § 271 rate

erroneously set by the Commission was "reasonable," thus eliminating any possible harm AT&T Kentucky may have suffered as a result of SouthEast's payments. As discussed above, SouthEast was not entitled to order resale items while paying nonresale prices. SouthEast's argument would undermine the negotiation of interconnection agreements, and promote unlawful self-help activities. The Court is unwilling to endorse such actions.

## II. Conclusion

The Commission has failed to abide by earlier orders issued by this Court. Further, SouthEast has failed to establish that its network element purchases were governed by § 271 of the 1996 Act. Accordingly, it is hereby

**ORDERED** as follows:

(1) Defendant Kentucky Public Service Commission is directed to calculate the amount owed to Plaintiff AT&T Kentucky by subtracting the amount already paid by Defendant SouthEast along with all applicable late charges, penalties, and interest.

(2) Defendant Kentucky Public Service Commission shall have up to sixty (60) days from the issuance of this Memorandum Opinion and Order to complete its calculations and issue a determination.

(3) Within sixty (60) days of the entry of this Order, Defendant Kentucky Public Service Commission shall file a copy of its decision with this Court. This Court shall retain jurisdiction over this proceeding until the Defendant Commission has fully and completely complied with this Order.

This 1st day of May, 2009.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge